# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | |
|---|---|
| **CARL M. HORRELL, JR.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) Case No. |
| **DEERE & COMPANY, and** | ) |
| | ) |
| Serve at The Corporation Company, Inc. | ) |
| 112 SW 7th St., Suite 3C, Topeka, KS 66603 | ) |
| | ) |
| **JOHN DEERE SHARED SERVICES, INC.,** | ) |
| | ) |
| Serve at The Corporation Company, Inc. | ) |
| 112 SW 7th St., Suite 3C, Topeka, KS 66603 | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

Plaintiff Carl M. Horrell Jr. ("Plaintiff"), by and through undersigned counsel, states and alleges as follows for his Complaint of age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA") and the Kansas Age Discrimination in Employment Act ("KADEA") against Defendants Deere & Company and John Deere Shared Services, Inc. (collectively, "Defendants"):

## PARTIES

1. Plaintiff, at all relevant times to the allegations herein, is a resident of the State of Kansas.

2. Defendant Deere & Company is a corporation organized under the laws of the state of Delaware with a principal place of business at C/O Tax Dept, One John Deere Place, Moline, Illinois 61265.

3. At all times relevant to the allegations herein, Defendant Deere & Company was an "employer" pursuant to the ADEA and KAAD.

4. Defendant John Deere Shared Services, Inc. is a corporation organized under the laws of the state of Delaware with a principal place of business at One John Deere Place Tax Dept, Moline, IL 61265.

5. At all times relevant to the allegations herein, Defendant John Deere Shared Services, Inc. was an "employer" pursuant to the ADEA and KAAD.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this case pursuant to 8 U.S.C. § 1331 because this matter presents questions of federal law.

7. This Court has supplemental jurisdiction over Plaintiff's additional claims pursuant to 28 U.S.C. § 1391(a) because they are so closely related to the claims in the action within the original jurisdiction of the Court that they form the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## ADMINISTRATIVE PROCEEDINGS

9. On or about June 6, 2019, Plaintiff timely filed a charge of discrimination against each Defendant with the Equal Employment Opportunity Commission ("EEOC"), which cross-filed the charges with the Kansas Human Rights Commission.

10. Thereafter, on or about October 9, 2019, EEOC issued notices of right to sue regarding Plaintiff's charges. A true and accurate copy of the notices are attached hereto as **Exhibit A** and incorporated herein by reference.

11. On October 22, 2019, the Kansas Human Rights Commission issued its notice of right to sue regarding Plaintiff's charges. A true and accurate copy of the notices are attached hereto as **Exhibit B** and incorporated by reference.

## FACTUAL ALLEGATIONS

12. At all times relevant to this Complaint, Plaintiff was 50 years or older.

13. Plaintiff began his employment with Defendants in March 1995.

14. Plaintiff's office was located at the John Deere Ag Marketing Center in Olathe, Kansas.

15. Plaintiff was Manager, Partnering during his employment until August 2017.

16. Plaintiff had always performed his job well to the satisfaction of his managers.

17. In April 2017, Plaintiff was informed by a supervisor in his 30s that his department was being reorganized and his position was being eliminated.

18. Plaintiff's job as Manager, Partnering had operations and sales management responsibility and was a salary grade 11.

19. Plaintiff's job functions did not go away. Instead, they were reassigned to younger employees in other locations.

20. Plaintiff was placed in the employee resource pool ("ERP"), a company program that was supposed to grant him preference for placement in open positions in the company for which he was qualified.

21. Defendants told Plaintiff that he would have 45 days to find another position with the option to be selective, followed by a 90-day period when the only option would be to take the first opportunity offered.

22. Defendants told Plaintiff that if he chose not to take an offer in the 90-day period, he would be choosing to leave the company.

23. Within the 45-day selective period, Plaintiff declined positions that required relocation, significant international travel, and/or position and salary downgrades.

24. Within the 45-day selective period, Plaintiff met with a supervisor, a senior vice president for Defendants, and expressed his interest in a new opportunity in the company. In response, Lagemann asked Plaintiff his age and asked Plaintiff when he planned to retire.

25. The senior vice president told Plaintiff that he has to remember and realize that at his age, it becomes harder to find the right opportunity because he will have to convince hiring managers that he is going to be around for a while to be impactful.

26. The senior vice president had also asked Plaintiff, on a previous occasion, when he planned to retire and if he could live on his military retirement benefits.

27. From these conversations with the senior vice president, Plaintiff understood Defendants thought he should be financially able to retire and should leave the company.

28. Two days later, Plaintiff approached a hiring manager and a recruiter about a job opening in the Hay & Forage marketing group, for which he was qualified and did not require relocation.

29. The hiring manager informed the recruiter for the position that Plaintiff was not qualified for the marketing job, even though Plaintiff had more than 20 years of experience in sales and marketing for Defendants.

30. A younger person was hired for the job instead.

31. According to Defendants' own policies, Plaintiff should have had priority for the position in Hay & Forage because he was in the ERP.

32. Plaintiff complained to Human Resources about how the position in the Hay & Forage group was being handled and that he did not believe that he was being treated fairly in the ERP because of his age.

33. In August 2017, within two weeks of complaining about disparate treatment in the ERP because of his age, Plaintiff was called to a meeting with a compliance auditor and a representative from Human Resources. Plaintiff was informed that he was being investigated for compliance, specifically around expense reports.

34. The investigation lasted for eight weeks, during which time Plaintiff was restricted from being considered for any job openings that might have come available.

35. In Plaintiff's decades of working for Defendants, Plaintiff had never been disciplined, accused of a compliance violation, or had an expense report questioned.

36. In late September 2017, the compliance investigation concluded and resulted in a finding that Plaintiff violated corporate policy by not using the approved travel agency 100% of times traveled.

37. Several younger employees in the Olathe office did not use the travel agency 100% of the time they traveled, yet they were not disciplined.

38. Plaintiff was falsely accused of a compliance violation and was wrongly disciplined as pretext for his eventual termination.

39. Plaintiff was told that his ERP status was now changing and that he would have to take the next opportunity offered, or he would be electing to leave the company.

40. Two weeks after the compliance cased closed, Plaintiff was offered a position in Dealer Development as Project Manager, a new position within the department.

41. Plaintiff immediately accepted the job. He reported to Terry Porter.

42. However, Plaintiff soon realized that the position had little to no assigned responsibilities and no authority.

43. From day one of working in Porter's department until his termination in March 2019, Plaintiff was subjected daily and regularly to a hostile work environment.

44. Throughout the remainder of his employment, Plaintiff was repeatedly asked by Porter to work on several projects that would later get pulled away from him.

45. Throughout the remainder of his employment, Porter scrutinized Plaintiff's calendar entries and every one of his expense reports.

46. Plaintiff was never subjected to this type of scrutiny in his 23 years of service.

47. Defendants were deliberately frustrating Plaintiff to force him to resign, or were setting him up to fail, because he complained of age discrimination.

48. During a one-on-one meeting in October 2018, Porter stated to Plaintiff that the only thing that gets people fired at John Deere is messing with expense reports.

49. In December 2018, Plaintiff attended the John Deere Parts Expo in Houston.

50. Plaintiff's wife attended the conference with him, as Defendants' policy allows, and as other employees did.

51. Defendant did not incur any expenses due to Plaintiff's wife's travel.

52. When Plaintiff submitted his expense report in January 2019, Porter questioned Plaintiff's evening meals.

53. Plaintiff assured Porter that he only submitted his meals and not his wife's meals.

54. After Porter realized that Plaintiff's wife was on the trip, Porter printed Plaintiff's expense report and took it immediately to Human Resources.

55. Defendants initiated another compliance investigation. This time, the investigation focused on Plaintiff's expenses in Houston, along with Plaintiff's work schedule and personal time off (PTO).

56. Plaintiff had never been told of any issues with his work schedule or PTO.

57. During the second week of February 2019 and the first week of March 2019, Plaintiff was called into two meetings with a financial compliance investigator and a representative from Human Resources.

58. Defendants asked Plaintiff about his travel expenses for his Houston trip and PTO.

59. Defendants asked Plaintiff about his card scans into the office and VPN access for remote networking.

60. Plaintiff truthfully explained his expenses and his PTO, none of which had violated Defendants' policy.

61. Plaintiff explained that he does not always need to access his work through VPN and could complete most of his work on his computer's hard drive to avoid possible network access issues.

62. On March 29, 2019, Plaintiff was called into a meeting with Porter and a representative from Human Resources.

63. Plaintiff was informed that the investigation had concluded and that his employment was ending, effective that day, due to the findings of the compliance investigation.

64. The reasons given were pretextual in that they were false or minor paperwork issues for which other, younger employees who had done the same thing had not been disciplined or fired.

## **COUNT I – AGE DISCRIMINATION – ADEA and KADEA**

65. Plaintiff incorporates all preceding paragraphs and allegations by reference as though fully set forth herein.

66. Defendants terminated Plaintiff's employment.

67. Defendants would not have terminated Plaintiff's employment but for the Plaintiff's age.

68. Defendants' stated reasons for their decision are not the real reasons, but are a pretext to hide age discrimination.

69. As a result of Defendants' unlawful conduct, Plaintiff has been damaged.

70. Defendants' illegal conduct was willful, in that Defendants knew Plaintiff's termination of employment was in violation of federal law prohibiting age discrimination or acted with reckless disregard of the law.

71. Plaintiff is entitled to all damages available under the ADEA and KADEA.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants Deere & Company and John Deere Shared Services, Inc. on Count I of his Complaint, for all damages available under the Age Discrimination in Employment Act and Kansas Age Discrimination in Employment Act, including lost wages and benefits, pain and suffering, humiliation, liquidated damages, interest, attorneys' fees and costs, and equitable relief, and for other and further relief as the Court deems just and proper.

## COUNT II – RETALIATION – ADEA and KADEA

72. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

73. Plaintiff complained to Defendants that he was being discriminated against on the basis of age.

74. Plaintiff reasonably believed that he was being discriminated against on the basis of his age.

75. Defendants subjected Plaintiff to a retaliatory hostile work environment, falsely and pretextually accused Plaintiff of compliance violations, wrongfully disciplined him and eventually terminated Plaintiff's employment.

76. Defendants would not have subjected Plaintiff to a retaliatory hostile work environment, falsely and pretextually accused Plaintiff of compliance violations, wrongfully disciplined him, and terminated Plaintiff's employment but for Plaintiff's complaint of disparate treatment because of his age.

77. Defendants' stated reasons for their decision are not the real reasons, but are a pretext to hide retaliation.

78. Defendants' illegal conduct was willful, in that Defendants knew their retaliatory conduct was in violation of federal law prohibiting retaliation or acted with reckless disregard of the law.

79. As a result of Defendants' unlawful conduct, Plaintiff has been damaged.

80. Plaintiff is entitled to all damages available under the ADEA and KADEA.

WHEREFORE, Plaintiff prays for judgment in his favor and against Defendants Deere & Company and John Deere Shared Services, Inc. on Count II of his Complaint, for all damages

available under the Age Discrimination in Employment Act ("ADEA"), including lost wages and benefits, liquidated damages, interest, attorneys' fees and costs, and equitable relief, and for other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests trial by jury on all Counts stated herein.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas, as the place of trial.

Respectfully submitted,

DYSART TAYLOR COTTER
McMONIGLE & MONTEMORE, P.C.

By  /s/ Anne E. Baggott
Anne E. Baggott, KS #23629
4420 Madison Avenue, Suite 200
Kansas City, MO  64111
T: (816) 931-2700
Fax: (816) 931-7377
abaggott@dysarttaylor.com

**ATTORNEYS FOR PLAINTIFF**